UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>DARRELL JANIS,<br><br>  Defendant. | CR. 16-50126-JLV<br><br>ORDER |

## INTRODUCTION

Defendant Darrell Janis, appearing *pro se,* filed a motion for compassionate release together with a brief summary of his current medical conditions. (Dockets 138 & 138-1). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Janis' motion. (Dockets 140-42 & 142-1 through 142-3, 147-48 & 148-1, 151 & 151-1). For the reasons stated below, defendant's motion is granted.

## STANDING ORDER 20-06

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a

---

[1]See https://www.sdd.uscourts.gov/so2006 ("SO 20-06"). SO 20-06 was amended on October 21, 2020, after this case was ripe for resolution. See https://www.sdd.uscourts.gov/socraa. The amendments have no impact on the court's analysis of this case.

procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4. Those categories are:

> a.   High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .
>
> b.   Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

2

      c.      Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

      d.      Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id. The standing order contains provisions for sharing of critical information between the FPD, the U.S. Attorney, the Probation Office and the court. Id. ¶ 5. The priority of briefing is set according to the different categories of assignment of a defendant. Id. ¶¶ 6-8.

### FACTUAL BACKGROUND

On September 5, 2017, defendant Darrell Janis was sentenced to concurrent terms of imprisonment of 96 months and 24 months on two counts of abusive sexual contact in violation of 18 U.S.C. §§ 2244(a)(1), 2246(3) and 1153. (Docket 106). Mr. Janis is currently an inmate at FCI Beaumont Low in Beaumont, Texas. (Docket 142 at p. 2). The parties agree and the Bureau of Prisons (BOP) Inmate Locator confirms Mr. Janis has a scheduled release date of March 1, 2024. (Dockets 138-1 at p. 11; 147 at p. 1; and https://www. bop.gov/inmateloc/ (last accessed October 22, 2020). As of this date, Mr. Janis has served about 45.3 percent of the full term of his sentence, and under his current status in the BOP, Mr. Janis' home detention eligibility date is September 1, 2023. (Docket 138-1 at p. 12). He is 61 years old. (Docket 142 at p. 1).

3

Mr. Janis' *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his personal health during the COVID-19 pandemic.  (Docket 138).  Mr. Janis' current health conditions include:

- Type 2 diabetes mellitus.  (Docket 142 at p. 8);

- Chronic obstructive pulmonary disease (COPD).  Id.;

- Asthma.  Id.;

- Hypertension.  Id.;

- Hyperlipidemia.  Id.;

- Gastro-esophageal reflux disease without esophagitis.  Id.;

- Osteoarthritis.  Id.; and

- Obesity.[2]  Id.

Mr. Janis' chronic conditions are reaffirmed throughout his medical records.

See Dockets 140-41.

---

[2] A health summary chart lists Mr. Janis as having been diagnosed as obese on September 10, 2018, and then notes that this condition was "resolved" on April 8, 2019.  (Docket 140 at p. 322).  It is unclear why Mr. Janis' obesity was marked as resolved in April 2019.  The Centers for Disease Control (CDC) considers someone to be at increased risk of severe illness from COVID-19 if they are obese, which is defined as having a BMI of 30 or higher.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcovid-data%2Finvestigations-discovery%2Fhospitalization-underlying-medical-conditions.html.  As of February 2020, Mr. Janis had a BMI of 34.54.  (Docket 140 at p. 766).

Additionally, Mr. Janis underwent a lung resection in 2004 to remove a lobe in his left lung. (Docket 140 at p. 61). In 2015, he spent more than a week hospitalized in intensive care after he contracted coronavirus NL63 and as a result suffered pneumonia, acute respiratory failure, COPD exacerbation, severe sepsis, and acute kidney injury. Id. Mr. Janis had several abnormal EKGs from February 2012 to May 2015, and another in December 2018 which resulted in a provisional diagnosis of "[coronary artery disease] with conduction defect" and a note that Mr. Janis would be scheduled for a follow-up echocardiogram. (Dockets 138-1 at pp. 75-79; 140 at p. 151). Mr. Janis' subsequent medical records do not confirm the echocardiogram was ever performed or an official diagnosis.

Addressing the 18 U.S.C. § 3553(a) factors, Mr. Janis emphasizes his "limited criminal history, particularly in recent years" and that his release on pretrial supervision was largely successful, "with only one issue involving another person bringing minor children into [his] home." (Docket 142 at p. 15). Notably, there were "no allegations of violent, threatening, or sexual misconduct in relation to this incident," Mr. Janis' bond "was not revoked, and he continued on pretrial release without any further incidents." (Docket 148 at p. 6). Mr. Janis "has not had any disciplinary violations in the over three years he has been incarcerated." (Docket 142 at p. 15). Throughout that time, Mr. Janis has been "working on his GED and has taken a number of continuing

5

education courses in a variety of areas." Id.  He has worked in the kitchen and actively complied with his medical treatment regimen.  (Docket 138 at p. 3).

Mr. Janis contends he is not a danger to the community and that "home confinement as a condition of supervised release" is sufficient to assuage the United States' contention otherwise, which is largely based on the nature and seriousness of the offenses of which he was convicted rather than on his satisfactory behavior and record since.  (Dockets 148 at p. 6; 147 at p. 10).  If released from custody, Mr. Janis represents that he has a safe and "stable release residence" in the home he owns just north of Kyle, South Dakota. (Docket 138 at p. 3).  He will "support himself with disability payments and . . . obtain medical care and food through the BIA."  (Docket 142 at p. 16).

## MR. JANIS' CLASSIFICATION

On August 21, 2020, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion.  (Docket 139).  They jointly "agree [Mr. Janis'] case should be categorized as an Intermediate Priority case." Id.

## ANALYSIS

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden

6

of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. Janis exhausted the administrative procedure provision contemplated by § 3582(c)(1)(A). On July 1, 2020, Mr. Janis made a request to Warden F. J. Garrido for the Bureau of Prisons to bring a motion on his behalf for a reduction in his sentence "based on the extraordinary and compelling reasons surrounding the current outbreak of COVID-19 at [FCI Beaumont Low and his] underlying health conditions: Asthma, COPD, Diabetes, and High Blood Pressure." (Docket 138-1 at p. 2). Warden Garrido denied Mr. Janis' request on July 10, 2020. (Docket 151-1). The warden's decision was based on the standard for "extraordinary or compelling reasons" delineated in "Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)[.]" Id. The factors in Program Statement 5050.50 are the same as those in the United States Sentencing Guidelines ("U.S.S.G."). Compare (Docket 151-1 and U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) (U.S.S.G. 2018)). However, the court's consideration of extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i) is not tied to U.S.S.G. § 1B1.13 cmt. n.1(A)-

7

(C) or the COVID-19 home confinement provisions of the CARES Act, Pub. L.
No. 116-136, Section 12003(b)(2).

Prior to the First Step Act "a court could revisit a previously-imposed
sentence if the [BOP] filed a motion to reduce the sentence, and if the court
concluded, based on criteria established by the U.S. Sentencing Commission,
that 'extraordinary and compelling reasons' warranted a sentence reduction."
United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *3 (W.D.N.Y. Apr.
20, 2020) (referencing 28 U.S.C. § 994(t) and 18 U.S.C. § 3582(c)(1)(A)).  With
the First Step Act, a defendant may now bring a § 3582 motion for reduction of
sentence.

The phrase "extraordinary and compelling reasons" was not defined by
Congress.  That task was left to the United States Sentencing Commission.
"[I]n promulgating general policy statements regarding the sentencing
modification provisions in section 3582(c)(1)(A) . . . [the Sentencing
Commission] shall describe what should be considered extraordinary and
compelling reasons for sentence reduction, including the criteria to be applied
and a list of specific examples." 28 U.S.C. § 994(t).  "[P]rior to the First Step
Act, the Sentencing Commission established four categories of circumstances
in which, in the Commission's view, 'extraordinary and compelling reasons
exist.' . . . Those relate generally to: the defendant's medical condition; the
defendant's age; the defendant's family circumstances; and any other reason
that the BOP director determines to be extraordinary and compelling."  Marks,

8

2020 WL 1908911, at *4 (citing U.S.S.G. § 1B1.13 cmt. n.1).  These four categories "have not been updated since the [First Step Act] was enacted in [December] 2018."[3]  Id.

Some courts believe the First Step Act only allows a court to grant a compassionate release motion if the BOP would have granted the motion under the law as it existed prior to the First Step Act.  See United States v. Willingham, CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) ("the Sentencing Commission, not the judiciary, determine[s] what constitutes an appropriate use of the 'compassionate release' provision.") (referencing 28 U.S.C. § 944(t)); United States v. Lynn, CRIMINAL NO. 89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 12, 2019) ("If the policy statement needs tweaking in light of Section 603(b) [of the First Step Act], that tweaking must be accomplished by the [Sentencing] Commission, not by the courts."); United States v. Shields, Case No. 12-cr-00410-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019) (there is no "authority for the proposition that the Court may disregard guidance provided by the Sentencing Commission where it appears that such guidance has not kept pace with statutory amendments").

---

[3]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two shy of the four it needs to amend the [U.S.S.G.]."  Marks, 2020 WL 1908911, at *6 (references omitted).

The United States Courts of Appeals for the Second and Seventh Circuits are the only courts of appeals that have addressed this issue.[4] See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. Gunn, Case No. 20-1959, 2020 WL 6813995 (7th Cir. Nov. 20, 2020). The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)." Brooker, 976 F.3d at 234. The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances." Id. The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable." Id. at 235. "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237; see also Gunn, 2020 WL 6813995 at *2 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

---

[4]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue recently but declined to do so. United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

Several district courts have not felt confined by the categories identified by the U.S.S.G. "While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). "An interpretation of the old policy statement as binding on the new compassionate release procedure is likely inconsistent with the [Sentencing] Commission's statutory role." Id. "It is also inconsistent with the First Step Act, which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when [BOP] finds they are not appropriate." Id. (referencing the First Step Act § 603(b) (captioned "INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE") (capitalization in original).

Because of the changes brought on by the First Step Act, "the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582." United States v. Cantu, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019) (emphasis in original). The Cantu court held:

> [T]he correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements "at any time," . . . —is that when a defendant brings a motion for a sentence

reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.

Id. at 352 (citing Mistretta v. United States, 488 U.S. 361, 394 (1989)).

"[T]he dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." United States v. Young, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." Id. The Young court concluded that "based on the First Step Act, [a majority of the district courts determined] they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons." Id. (referencing United States v. Maumau, Case No. 2:08-cr-758-11, 2020 WL 806121, at 2 (D. Utah Feb. 18, 2020) ("the portion of the catch-all provision that limits relief to grounds identified by the Director is inconsistent with the law. . . . [A] majority of district courts to consider the question have embraced Mr. Maumau's position."); United States v. Brown, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) ("If the [First Step Act] is to increase the use of compassionate release, the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP Director when it considers a

12

compassionate release motion properly before it. . . . Thus, the Director's prior interpretation of 'extraordinary and compelling' reasons is informative, but not dispositive.") (internal quotation marks, citations and brackets omitted); United States v. Fox, Criminal No. 2:14-cr-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change."); Beck, 425 F. Supp. 3d at 579; Cantu, 2019 WL 2498923, at *4.  The Marks court agrees with the analyses of these courts.  Marks, 2020 WL 1908911, at *5.

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 976 F.3d at 237.  The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Mr. Janis argues he meets the criteria of U.S.S.G. § 1B1.13, application notes 1(A)(ii) and 1(D).  (Dockets 138-1 at p. 2; 142 at pp.3-5, 12-14; 148 at pp. 3-6).  Mr. Janis submits that, "based on his Type 2 diabetes, COPD, and obesity," as well as his "age[ and] other health conditions" such as

13

hypertension, asthma, and the provisional diagnosis of coronary artery disease,
he is likely to "develop life-threatening complications if he contracts COVID-
19." (Docket 148 at pp. 3-5). The conditions of his incarceration prevent Janis
from "adequately provid[ing] self-care to prevent contracting COVID-19 or to
care for [him]self if he does." Id. at p. 3. Mr. Janis lives "in a 3-person 'cube' in
a unit of 150 to 200 people (where the entire unit lives in a single room
separated into smaller sleeping areas by low walls)." Id. at p. 5. In this
environment, he is unable to consistently socially distance or implement many
of the other heightened precautions recommended by the CDC relating to
sanitation and avoiding close contact with others, especially when spending
time in enclosed or shared spaces. See https://www.cdc.gov/coronavirus/
2019-ncov/prevent-getting-sick/prevention.html (last updated Sept. 11, 2020).

The government acknowledges Mr. Janis' chronic health conditions
constitute extraordinary and compelling reasons warranting a sentence
reduction in the face of the COVID-19 pandemic, stating:

> [T]he Department of Justice has determined that, during the COVID-
> 19 pandemic, conditions like Type 2 diabetes, COPD, and obesity,
> which the CDC has determined increase risk of severe illness due to
> COVID-19, present "a serious physical or medical condition . . . that
> substantially diminishes the ability of the defendant to provide self-
> care within the environment of a correctional facility and from which
> he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt.
> n.1(A)(ii)(I), in that the inmate's ability to provide self-care against
> serious injury or death as a result of COVID-19 is substantially
> diminished, within the environment of a correctional facility, by the
> chronic condition itself, which meets the extraordinary and
> compelling reason standard.

14

(Docket 147 at p. 7). Despite this acknowledgement, the government asserts Mr. Janis' "medical records, themselves, do not support that [Mr. Janis] is unable to provide self-care" because the "Beaumont Low facility has made significant changes to operations to protect the inmates [from COVID-19], which appear to be effective," and Mr. Janis is successfully managing his other health conditions, including hypertension and asthma. Id. at pp. 6-8.

The government asserts Mr. Janis' "medical concerns, conditions at the facility, and [Mr. Janis'] ability to provide self-care are not the sole considerations," and that "a reduction [must be] consistent with applicable policy statements issued by the Sentencing Commission"—namely, the factors in 18 U.S.C. § 3553(a). Id. at pp. 8-9. The government contends consideration of the 3553(a) factors weighs against Mr. Janis' release. Id. at p. 9.

First, the government argues Mr. Janis "would pose a danger to public safety if released," as indicated by the nature of his conduct that was the subject of his conviction—sexual contact with an 11-year-old girl—and his failure to "abide by conditions of pre-trial release requiring him not to have contact with minor children." Id. at p. 9. Second, the government submits the crime for which Mr. Janis was convicted is serious, involving significant "harm to a victim, whose life was impacted by his conduct," and "[a]llowing Janis to serve less than 50% of the sentence imposed does not promote respect for the law or provide just punishment for the offense." Id. at p. 10. Nor, in the government's view, would a reduced sentence adequately deter Mr. Janis from

15

engaging in criminal conduct in the future. Id. at p. 11.  Third, the government emphasizes the court was "aware of [Mr.] Janis's medical circumstances when he was sentenced, and he is able to receive the medical care he needs while incarcerated." Id. at p. 11 (internal citation omitted).

Finally, the government asks that if the court grants Mr. Janis' motion for compassionate release, it "substitute a term of probation or supervised release with a condition of home confinement for the duration of [Mr. Janis'] current sentence of imprisonment" rather than releasing Mr. Janis outright. Id. at p. 13.  It also asks that "any order provide release only after [Mr. Janis'] release and travel plans are in place, and [for the court to] set any release 14 days from the date of its order to accommodate BOP's ability to quarantine [Mr. Janis] prior to his release to protect the community from potential further spread." Id.

In reply, Mr. Janis argues he has shown extraordinary and compelling reasons warranting compassionate release under U.S.S.G. § 1B1.13, application note 1(A)(ii) based on his Type 2 diabetes, COPD and obesity. (Docket 148 at p. 3).  He asserts his age and other health conditions including hypertension, asthma and other recurring respiratory issues, and the provisional diagnosis he received of coronary artery disease are additional extraordinary and compelling reasons for his release. Id. at pp. 3-5.  Regarding the 3553(a) factors, Mr. Janis maintains he is not a danger to the community, citing the fact he has not "had any disciplinary violations in jail or prison" and

16

asserting that "the apparent bond violation (where children had been brought to [his] home)" does not support he would be a danger to the community because it involved "no allegations of violent, threatening, or sexual misconduct." Id. at p. 6. He argues "home confinement as a condition of supervised release" would assuage any outstanding government concerns about any public safety risk he might pose. Id. He is "making good progress on his GED." Id. And while "the court was aware of [Mr.] Janis's medical conditions at sentencing," Mr. Janis asserts the COVID-19 pandemic "changes the sentencing calculation in this case," turning his "serious, but manageable, health conditions into significant risk factors for severe illness or death." Id. at p. 7.

The court finds Mr. Janis meets his burden of proof and presents extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A)(i).

FCI Beaumont Low currently has 275 active cases of COVID-19 among inmates and one active case among staff. https://www.bop.gov/coronavirus/ (Last visited December 1, 2020). Among its total incarcerated population of 1,693, only 837 individuals have been tested for the virus. Id. Of those individuals, 582 have tested positive. Id. The facility reports no pending COVID-19 tests. Id.

The Centers for Disease Control (CDC) identified factors that increase community spread of COVID-19 and individual risk, including crowded

17

situations, enclosed spaces and close or physical contact among people, especially for longer durations.  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcovid-data%2Finvestigations-discovery%2Fhospitalization-underlying-medical-conditions.html (last updated Oct. 16, 2020).  Despite BOP's conditions of modified operations implemented to slow the spread of COVID-19 in prisons, the practical reality is many of the factors increasing community spread and individual risk of exposure to the virus are simply unavoidable in a prison setting.  See https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Oct. 8, 2020).  This is true for Mr. Janis in FCI Beaumont Low, where he "lives in a 3-person 'cube' in a unit of 150 to 200 people," with the entire unit housed "in a single room separated into smaller sleeping areas by low walls." (Docket 148 at p. 5).

The risk of exposure is most concerning for individuals who have certain medical conditions which make them more likely to experience severe infection should they contract COVID-19.  Mr. Janis is among this at-risk population. The CDC has so far identified ten underlying medical conditions that it has found put "[a]dults of any age . . . at increased risk of severe illness from the virus that causes COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-

18

ncov%2Fcovid-data%2Finvestigations-discovery%2Fhospitalization-underlying-
medical-conditions.html (last updated Oct. 16, 2020).  Mr. Janis has four of
these conditions: COPD, type 2 diabetes mellitus, obesity and a provisional
diagnosis of coronary artery disease.  The CDC has also found "adults of any
age" with any of another dozen conditions "might be at an increased risk for
severe illness" if they contract COVID-19.  Id.  Mr. Janis has two of these
conditions: asthma and hypertension.

From a careful review of his extensive medical records detailing these
conditions, among others he faces, the court finds Mr. Janis' major health
issues and risk factors are chronic.  That is, his conditions will only persist and
likely worsen over time.  During the COVID-19 pandemic, Mr. Janis' conditions
significantly diminish his ability to provide self-care within the environment of
a correctional facility, putting him at risk of severe illness—and even death—
should he contract the virus.  As mentioned earlier in this order, the
government acknowledges this fact.  See supra pp. 14-15.  The court finds Mr.
Janis' chronic and severe medical conditions make him especially vulnerable to
COVID-19, even compared to other individuals incarcerated in FCI Beaumont
Low or another BOP facility.  Against these findings, the court must consider if
compassionate release comports with the § 3553(a) factors.

In Mr. Janis' case, the "nature and circumstances of the offense"—
abusive sexual contact—is serious.  18 U.S.C. § 3553(a)(1).  "[T]he history and
characteristics of the defendant" requires the court to consider the defendant

19

as a whole person. <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996).  Mr. Janis
had a number of minor offenses including theft, alcohol related crimes and
driving offenses.  (PSR ¶¶ 34-47).  He had one felony prior to the instant case
for possession of marijuana. <u>Id.</u> at ¶ 43.  While on pretrial release in the
present case, Mr. Janis was not to have contact with minor children. <u>See id.</u>
¶ 4.  On one occasion when an investigating agent and Assistant U.S. Attorney
arrived at Mr. Janis' home, minor children were present. <u>Id.</u>  The children
belonged to Mr. Janis' daughter, who had brought them to the home when she
did not have a place to live or food. <u>Id.</u>  Mr. Janis' pretrial officer addressed the
incident with Mr. Janis, and no further action was taken. <u>Id.</u>  Mr. Janis had
no disciplinary issues during his time in jail prior to his trial, nor has he had
any disciplinary violations while in prison.  (Docket 140 at p. 773).  He has
made progress toward his GED and taken a wide variety of courses while
incarcerated. <u>Id.</u> at p. 774.

In the court's view the sentence imposed in Mr. Janis' case "reflect[ed]
the seriousness of the offense, . . . promote[d] respect for the law, . . . provide[d]
just punishment for the offense . . . [and] afford[ed] adequate deterrence to
[future] criminal conduct" by Mr. Janis.  18 U.S.C. §§ 3553(a)(2)(A) & (B).  As of
this date, Mr. Janis has served about 45.3 percent of his sentence. <u>See supra</u>
p. 3.  Considering the length of the defendant's time in prison and his behavior
while incarcerated, as well as the supervised release special conditions imposed
at sentencing, additional incarceration is not necessary "to protect the public

from further crimes of the defendant." Id. § 3553(a)(2)(C).  Mr. Janis' obligation
to comply with the terms of supervised release would best "provide the
defendant with . . . correctional treatment in the most effective manner." Id.
§ 3553(a)(2)(D).

Incarceration is not the only "kind[] of sentence[] available." Id.
§ 3553(a)(3).  A noncustodial sentence will limit Mr. Janis' liberty interests
through supervised release and he will face harsh consequences if he violates
the special conditions activated upon his release from BOP custody.  United
States v. Gall, 374 F. Supp. 2d 758, 763 (S.D. Iowa 2005), rev'd, 446 F.3d 884
(8th Cir. 2006), rev'd, 552 U.S. 38 (2007).  Those special conditions promote
respect for the law, protect the public and do not constitute any approval of Mr.
Janis' criminal conduct. Id.

At this juncture, use of the First Step Act will not create "unwarranted
sentence disparities among defendants with similar records who have been
found guilty of similar conduct." Id. § 3553(a)(6).  The court finds
compassionate release is appropriate and Mr. Janis will not pose a danger to
the public.

The court does not have authority to modify the defendant's sentence to
home confinement. United States v. Amarrah, Case No. 17-20464, 2020 WL
2220008, at *8 (E.D. Mich. May 7, 2020).  The court does, however, retain the
authority to reduce Mr. Janis' sentence to time served.  Following his release
from custody, Mr. Janis will remain on supervised release for five years,

21

subject to the standard conditions and the special conditions of supervised release imposed in the original sentence.  (Docket 106 at pp. 4-5).

Good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 138) is granted.

IT IS FURTHER ORDERD that the defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that upon his release, Mr. Janis shall reside at his home near Kyle, South Dakota.

IT IS FURTHER ORDERED that within 72 hours of release from the custody of the BOP Mr. Janis must report, by telephone, 605-339-5920, to the United States Probation and Pretrial Services Office for the District of South Dakota in the United States Courthouse, 515 Ninth Street, Room 203, Rapid City, South Dakota 57701.

IT IS FURTHER ORDERED that Mr. Janis shall remain on supervised release for five years, subject to the standard conditions of supervision and the special conditions of supervision imposed in the original sentence of September 11, 2017.  (Docket 106 at pp. 4-5).

IT IS FURTHER ORDERED that Mr. Janis shall be subject to home confinement as an additional special condition of supervision.

IT IS FURTHER ORDERED that the United States Probation Office shall prepare an amended judgment consistent with this order.

IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Probation Office and the United States Marshals Service.

Dated December 2, 2020.

BY THE COURT:

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE